# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BOB MORRIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-669-D |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) issued a final decision denying Bob Morris' (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Judge Timothy D. DeGiusti referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs,[2] and recommends that the court affirm the Commissioner's decision.

---

[2]    Briefs exceeding fifteen pages "shall be accompanied by an indexed table of contents, showing the heading or sub-headings and an indexed table of statues, rules, ordinances, cases, and other authorities cited." LCvR7.1(e).

## I. Administrative proceedings.

In his initial applications for benefits, Plaintiff alleged that his impairments became disabling in September 2007. AR 124-26, 127-31. The Social Security Administration (SSA) denied Plaintiff's claims, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 19-58. In her September 2010 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 14. The SSA Appeals Council declined review, *id.* at 1-4, and Plaintiff sought review in federal court. *Id.* at 586. The United States District Court for the Eastern District of Oklahoma reversed and remanded the decision in September 2012. *Id.* at 585-93.

In the interim, Plaintiff filed a second application for supplemental security income. *Id.* at 704-09. When the SSA Appeals Council remanded the initial case per the federal court's order, the Council consolidated it with Plaintiff's new application. *Id.* at 596. A new ALJ conducted a second hearing, *id.* at 525-63, and in his May 2013 decision, he also found that Plaintiff is not disabled. *Id.* at 517. Plaintiff now seeks review in this Court. Doc. 1.

---

Plaintiff's opening brief exceeded fifteen pages, Doc. 17, yet he failed to supply the required indexes.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, Plaintiff's burden shifts to proving that his impairment meets or equals any of the "listing of impairments" − those impairments that are considered "severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925; *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

If Plaintiff proves that he has one or more severe impairments, but not one that meets or equals a "listed impairment," the ALJ will conduct a

residual functional capacity (RFC)[3] assessment at step four to determine what, if anything, Plaintiff can still do despite his impairments. *See* 20 C.F.R. §§ 404.1545(e), 416.912(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that he cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims.

According to Plaintiff, the ALJ's decision must be reversed for five reasons. First, Plaintiff alleges that the ALJ erred at step three in failing to find that his severe chronic obstructive pulmonary disease (COPD) meets Listing 3.02A. Doc. 16, at 10-13. Second, he alleges that substantial evidence cannot support the ALJ's RFC assessment for light work because the first ALJ's 2011 RFC assessment was for sedentary work and even it could not withstand federal court scrutiny. *Id.* at 13-14. Third, Plaintiff argues that the ALJ erred in rejecting the 2009 state agency physician's opinion and giving great weight to the 2011 state agency physicians' opinions.

---

[3]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

*Id.* at 14-16. Fourth, Plaintiff complains that the RFC assessment is "inconsistent" with the "Listing Level Pulmonary Function Studies" and Dr. Myers' assessment. *Id.* at 15.[4] And, fifth, he contends that the ALJ's RFC assessment is conclusory. *Id.* at 16.

The undersigned finds no reversible error.

## IV. Analysis.

### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). In determining whether substantial evidence exists, the court "will not reweigh the evidence." *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004). Further, the court will consider waived all "unspecific, undeveloped, and unsupported" arguments. *Tietjen v. Colvin,* 527 F. App'x 705, 709 (10th Cir. 2013).

### B. The ALJ's findings.

The ALJ found that Plaintiff: (1) met the insured status requirements through March 31, 2010; (2) has not engaged in substantial gainful activity since September 2007; and (3) has severe: "COPD, shoulder pain (bursitis), [and] back pain." AR 506. The ALJ then found that Plaintiff: (1) has no

---

[4] Unless otherwise indicated, all quotations are reprinted verbatim.

impairment that meets or equals a "listed impairment"; (2) has the RFC to perform the equivalent of light work with some exertional and nonexertional limitations; and (3) can perform other jobs existing in significant numbers in the national economy. *Id.* at 506-07, 516-17.

C.   Analysis.

1.   **The ALJ's alleged error at step three.**

"At step three, the ALJ determines whether the claimant's impairment 'is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity.'" *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citation omitted). Plaintiff alleges that his severe COPD meets "Listing 3.02A," Doc. 16, at 10-13, but the undersigned disagrees.

Listing 3.02(A) describes "Chronic pulmonary insufficiency," and for Plaintiff to meet or equal this listing he must have, in relevant part:

> Chronic obstructive pulmonary disease, due to any cause, with the [forced expiratory volume ($FEV_1$)] equal to or less than the values specified in table I corresponding to the person's height without shoes.

20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02(A). The $FEV_1$ is measured through an instrument called a "spirograph," both before and after the patient inhales a "bronchodilator" medication. *See* § 3.00(E). Both measurements produce $FEV_1$ values, but only the highest post-bronchodilator result is used to assess

6

the severity of the respiratory impairment. *See id.* For a claimant of "72 or more" inches in height, the post-bronchodilator $FEV_1$ must be equal to or less than 1.65. *Id.* § 3.02(A). And, "the reported one-second [$FEV_1$] and forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers." *Id.* § 3.00(E). To ensure a "satisfactory" test, "[p]ulmonary function studies should not be performed unless the clinical status is stable (e.g., the individual is not having an asthmatic attack or suffering from an acute respiratory infection or other chronic illness)." *Id.* The test administrator must make a "report of the individual's . . . effort and cooperation in performing the pulmonary function tests." *Id.*

Plaintiff alleges that his COPD meets Listing 3.02(A) based on a pulmonary function study performed on January 20, 2009. Doc. 16, at 10-11. That study shows that Plaintiff stands at 72 inches in height, and his post-bronchodilator $FEV_1$ scores were 0.81, 1.56, and 1.29. *Id.* at 10; AR 372.

Plaintiff is correct that his largest $FEV_1$ score − 1.56 − is less than Listing 3.02(A)'s 1.65 requirement. However, the numbers must be produced in a *satisfactory* assessment. Plaintiff's test administrator marked Plaintiff's effort as "poor" because he "[d]idn't seem to try hard at all [and] lots of coughing." *Id.* at 371. Plaintiff argues that it was his coughing that

7

degraded the test, not a lack of cooperativeness, Doc. 16, at 12,[5] but as the Commissioner argues, the reason the test is defective is irrelevant. Doc. 17, at 6. Whether it was Plaintiff's coughing or his lack of effort, the January 20, 2009 pulmonary test is not a *satisfactory* assessment for Listing 3.02(A). *See, e.g., Knox v. Colvin*, No. 13-CV-67-FHM, 2014 WL 183912, at *3-4 (N.D. Okla. Jan. 14, 2014) (unpublished order) (finding that pulmonary function tests rated grades of "D" and "F" for "session quality" did not provide substantial evidence for Listing 3.02(A) because it did not meet the listing's "documentation specifications").

The undersigned finds that Plaintiff's pulmonary function test dated January 20, 2009 does not provide substantial evidence that he meets or equals Listing 3.02(A). And, on his subsequent pulmonary function tests, Plaintiff's largest post-bronchodilator $FEV_1$ numbers were 1.72 (in May 2010) and 2.78 (in March 2011), exceeding Listing 3.02(A)'s "equal to or less than" 1.65 requirement. AR 497, 816. The undersigned finds no merit in Plaintiff's argument that the ALJ erred in failing to find that his COPD meets or equals Listing 3.02(A).

---

5 In so arguing, Plaintiff explains why his coughing should not have been "used to discredit" him. Doc. 16, at 12. To the extent that Plaintiff's brief can be read to suggest a flaw in the ALJ's credibility assessment, the undersigned finds that the Plaintiff's argument is fatally undeveloped. *See Tietjen*, 527 F. App'x at 709.

8

### 2. Plaintiff's comparison of the 2011 and 2013 RFCs.

Plaintiff identifies no error in his second allegation, instead basing his claim on circular logic. Plaintiff suggests that because the first ALJ found that Plaintiff could perform only sedentary work, and the federal court reversed and remanded *that* finding, "it stands to reason that an even less restrictive RFC for Light Work would also be unsupported by the medical evidence." Doc. 16, at 14. But the federal court *did not hold* that the 2011 RFC was per se unsupported by substantial evidence, AR 587-93, and the undersigned finds no arguable ground for reversal in this claim.

### 3. The ALJ's weighing of the state agency physicians' opinions.

In 2009, a state agency physician reviewed Plaintiff's medical records and opined that Plaintiff can perform sedentary work with some exertional limitations. *Id.* at 377-84, 387. In 2011, different state agency physicians opined that Plaintiff can perform the equivalent of medium work with some exertional limitations. *Id.* at 822-29, 840-47. The ALJ rejected the 2009 opinion and gave "great weight" to the 2011 opinions. *Id.* at 513. Plaintiff alleges error in both findings. Doc. 16, at 14-16.

When evaluating a non-examining medical opinion, the ALJ must particularly consider the extent to which the medical source provides "relevant evidence to support" his or her opinion. *See McDonald v. Astrue*,

492 F. App'x 875, 882 (10th Cir. 2013). The undersigned concludes that here, the ALJ was correct in finding that the 2009 state agency physician's opinion was not well supported and that the 2011 state agency physicians' opinions were well supported.

### a. The 2009 state agency physician's opinion.

In 2009, state agency physician Dr. David Hicks reviewed the records from four emergency room visits and Plaintiff's January 2009 pulmonary function test, and then stated: "Owing to MDI of COPD with apparently significantly reduced $FEV_1$, RFC is sedentary with avoidance of even moderate exposure to dust and fumes." AR 384. The ALJ gave Dr. Hicks' RFC assessment "little weight," explaining:

> [T]he State Agency physicians found [Plaintiff] could perform only 'sedentary' work based on the Exhibit 5F pulmonary function study. I note again that he put forth 'poor effort' on the study, and that the subsequent pulmonary function studies revealed better results and only 'moderate' obstruction. Furthermore, the findings on examination of intact strength and normal gait indicate he is not limited to a range of 'sedentary' work.

*Id.* at 513.

Plaintiff argues that Dr. Hicks' RFC was not based "solely" on the 2009 pulmonary function test, Doc. 16, at 15, but the ALJ seemed to believe that it was. The ALJ's interpretation is reasonable, based on Dr. Hicks' comment that his RFC assessment was "owing" to the COPD diagnosis and the

10

"apparently significantly reduced FEV$_1$." AR 384. The ALJ did not just discount Dr. Hicks' opinion because of the physician's reliance on the 2009 pulmonary test, but also based on the "findings on examination" and "subsequent pulmonary function studies." *Id.* at 513. It is not this Court's province to reweigh the evidence, and the undersigned finds no reversible error in the ALJ's discounting of Dr. Hicks' 2009 RFC assessment.

### b. The 2011 state agency physicians' opinions.

In 2011, two state agency physicians opined that Plaintiff can perform the equivalent of medium work. *Id.* at 822-29, 840-47. Dr. J. Marks-Snelling stated that the RFC was based on Plaintiff's own assessment of his abilities, plus the: (1) October 13, 2009 frontal chest x-ray; (2) November 27, 2009 physical examination at Summit Medical Center; (3) December 14, 2010 "EKG"; and (4) pulmonary function study dated March 28, 2011. *Id.* at 823-24. Dr. James Metcalf stated that the "[medical evidence of record] shows [Plaintiff] with a history of COPD, back pain and history of shoulder dislocaation [sic] and pain." *Id.* at 841. Dr. Metcalf then specifically discussed Plaintiff's own assessments of his abilities, and Plaintiff's: (1) March 2011 pulmonary function study, and (2) physical examination dated July 2011. *Id.* at 841-42.

Plaintiff claims these state agency physicians "had a limited view of the evidence" and "did not have the any of the same [sic] evidence" as the 2009

state agency physician. Doc. 16, at 14. But Dr. Marks-Snelling cited to 2009 evidence, and Dr. Metcalf stated that he had based his opinion on the medical record showing a history of COPD. AR 823-24; 841-42. This suggests that both physicians had access to the entire medical record. Dr. Marks-Snelling issued the RFC assessment on March 30, 2011, and on March 31, 2011, the agency informed Plaintiff that a physician had reviewed "the medical evidence in [his] prior disability file" and new medical evidence. *Id.* at 829, 637. Likewise, Dr. Metcalf issued his opinion on September 13, 2011, and the agency informed Plaintiff two days later that a physician had independently reviewed all the medical evidence in the record plus additional evidence received since the first ALJ's decision. *Id.* at 847, 644. So, the undersigned finds no evidence to suggest that the 2011 state agency physicians lacked access to Plaintiff's entire medical file, and no legal error in the ALJ's reliance on these opinions.

### 4. The alleged inconsistencies between the RFC and medical evidence.

According to Plaintiff, substantial evidence does not support the ALJ's RFC assessment because the RFC is "inconsistent" with the pulmonary function studies, the 2009 state agency physician's opinion, and Dr. Myers' "assessment." Doc. 16, at 15. The undersigned finds no grounds for reversal.

First, as discussed above, the ALJ properly assigned state agency physician Dr. Hicks' 2009 RFC opinion little weight.

Second, the ALJ properly discounted the results of the 2009 pulmonary function study, AR 508, 513, and Plaintiff fails to explain how the 2010 and 2011 studies "contradict an ability to stand and walk 6 hours in a workday." Doc. 16, at 15. Indeed, the 2010 study found only "moderate" lung disease, AR 496, and the 2011 study showed better $FEV_1$ results than in 2010. *Id.* at 816. Finally, Plaintiff does not cite to any physician who has opined that his 2010 and 2011 pulmonary function studies "contradict" an ability to stand and walk for up to six hours in a workday. Conversely, both state agency physicians opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday. *Id.* at 823, 841.

Third and finally, the ALJ gave Dr. Myers' 2009 opinion "little weight," *id.* at 512, and Plaintiff does not challenge that finding.

The undersigned finds no merit in Plaintiff's claim that the RFC contradicts the substantive evidence of record.

### 5. The ALJ's allegedly conclusory RFC assessment.

In his final paragraph, Plaintiff alleges that the ALJ's RFC assessment is "conclusory" because he failed to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Doc. 16, at 16. Plaintiff also accuses the ALJ of failing to "give any

First, as discussed above, the ALJ properly assigned state agency physician Dr. Hicks' 2009 RFC opinion little weight.

Second, the ALJ properly discounted the results of the 2009 pulmonary function study, AR 508, 513, and Plaintiff fails to explain how the 2010 and 2011 studies "contradict an ability to stand and walk 6 hours in a workday." Doc. 16, at 15. Indeed, the 2010 study found only "moderate" lung disease, AR 496, and the 2011 study showed better $FEV_1$ results than in 2010. *Id.* at 816. Finally, Plaintiff does not cite to any physician who has opined that his 2010 and 2011 pulmonary function studies "contradict" an ability to stand and walk for up to six hours in a workday. Conversely, both state agency physicians opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday. *Id.* at 823, 841.

Third and finally, the ALJ gave Dr. Myers' 2009 opinion "little weight," *id.* at 512, and Plaintiff does not challenge that finding.

The undersigned finds no merit in Plaintiff's claim that the RFC contradicts the substantive evidence of record.

### 5. The ALJ's allegedly conclusory RFC assessment.

In his final paragraph, Plaintiff alleges that the ALJ's RFC assessment is "conclusory" because he failed to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Doc. 16, at 16. Plaintiff also accuses the ALJ of failing to "give any

rationale regarding Plaintiff's ability to walk, which the evidence shows is extremely limited due to his Chronic Bronchitis/COPD/Shortness of Breath/Low Vital Capacity; and Lung age of 80." *Id.*

The undersigned notes that the ALJ's explanation for his RFC assessment is a full nine pages long and contains a thorough analysis of the medical evidence and Plaintiff's testimony. AR 507-16. Duplicating that discussion here is impractical, particularly because Plaintiff does not cite to any alleged "material inconsistencies or ambiguities" that the ALJ failed to resolve. It is not the duty of this Court to scour the ALJ's opinion on Plaintiff's behalf. *See, e.g., Tietjen*, 527 F. App'x at 709 (refusing to address "an unspecific, undeveloped, and unsupported" argument). As discussed above, Plaintiff cites no medical opinion limiting his ability to walk, and the state agency physicians opined that Plaintiff can stand and/or walk up to six hours in an eight-hour workday. So, the undersigned finds no merit in Plaintiff's general allegation that the ALJ's RFC assessment was conclusory.

## V. Recommendation and notice of right to object

For the reasons discussed above, the undersigned recommends that the Court affirm the Commissioner's decision.

The parties are advised of their right to object to this report and recommendation by the 22nd day of June, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to

make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 2nd day of June, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE